# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Kevin Doheny, a Special Agent with the Drug Enforcement Administration (DEA), being duly sworn, do hereby depose and state as follows:

1. I am an "investigative or law enforcement officer" within the meaning of Section 2510(7) of Title 18, United States Code, and am authorized by law to conduct investigations and make arrests for offenses enumerated in the United States Code. I am a "Federal Law Enforcement officer" within the meaning of Fed.R.Crim.P. 41(a)(2)(C).

## PURPOSE OF THIS AFFIDAVIT

2. This affidavit is submitted in support of a complaint and arrest warrant for Jonathan KEES. I assert that there is probable cause to believe that KEES violated Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C) distribution of a controlled substance.

3. The statements set forth in this affidavit are based upon my training and experience, consultation with other experienced investigators, agents, and other sources of information related to this and other firearms investigations. This affidavit is intended to set forth probable cause in support of the criminal complaint and arrest warrant and does not purport to set forth all of my knowledge regarding this investigation.

## BACKGROUND OF AFFIANT

4. I am a Special Agent with the Drug Enforcement Administration (DEA), United States Department of Justice, and as such I am empowered under Title 21, United States Code, § 878, to enforce Title 21 and other criminal laws of the United States, to make arrests and obtain and execute search, seizure, and arrest warrants. I have been employed as a DEA Special Agent for over two years. In connection with my official duties, I investigate criminal and civil violations of the Controlled

Substances Act, and I have testified in judicial proceedings for violations of laws concerning controlled substances. During my time with DEA, I have participated in numerous drug trafficking investigations, including investigations that have resulted in felony arrests for violations of Title 21 of the United States Code. I have been involved in various types of electronic surveillance, in the execution of search and arrest warrants, and in the debriefing of defendants, witnesses and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealing of proceeds from controlled substance trafficking.

## FACTS AND BACKGROUND OF THE INVESTIGATION

5.  Since 2018, the DEA Grand Junction Resident Office (GJRO), the DEA Glenwood Springs Post of Duty (GSPOD), and the Western Colorado Drug Task Force (WCDTF) have been conducting an investigation into the distribution of fentanyl in the Western Colorado region. Through this investigation, agents have identified Bruce Holder as a source of counterfeit trademark opiate pills containing fentanyl. Bruce Holder had a vast fentanyl pill distribution network, which included numerous family members, including his daughter, Lexus Holder.

6.  Beginning in May 2018, agents from the DEA and the WCDTF identified Michael Bowen as a distributor of fentanyl pills. During the course of the investigation, agents established a confidential source (CS) that provided information as to the drug distribution activities of Bowen and his associates.

7.  Over the course of the investigation, agents from the DEA conducted debriefs of the CS regarding Bowen and his associates.

   a.  The CS said he/she had known Bowen for less than one year. The CS informed agents that he/she believed Bowen was distributing fentanyl pills and other pills within the Grand Junction/Mesa County area. According to the CS, Bowen routinely made

trips to his source of supply to pick up fentanyl pills and Bowen had the ability to get these pills at any time.

      b.      The CS provided information because he/she knows the pills that are being distributed contain fentanyl and fears other users will die. The CS is aware of one person, Tanner Crosby, who died from an overdose that included fentanyl. I have reviewed an autopsy report for Tanner Crosby that confirms that he died on May 19, 2018, from a multi-drug overdose that included fentanyl.

      c.      The CS has a limited criminal history. The CS has never knowingly provided information related to the drug trafficking activities of Bowen, Bruce Holder, and/or their associates that has proven to be false. I have been able to corroborate some of the information obtained from the CS, adding to the CS's credibility.

8.      Due to Bowen's possible connection to Tanner Crosby's death, Bowen explained to the CS that he feared the police would come looking for him. Bowen told the CS that Bowen would provide the CS's phone number to Jonathan KEES, who is an associate of Bowen.

9.      Agents utilized the CS to conduct several controlled purchases of fentanyl pills from KEES. Each of these controlled purchases involved a residence at 2545 Kennedy Ave, Grand Junction, CO. Surveillance of this location has shown that it is Lexus Holder's residence. Based on witness interviews, review of social media information, and surveillance, I know that Lexus Holder is the daughter of Bruce Holder and Corina Holder.

10.      On July 3, 2018, the CS contacted Kees to arrange a controlled purchase of 50 pills for $1,500.00.

      a.      Prior to the purchase, DEA Task Force Officer ("TFO") Blake McClellan conducted surveillance at Lexus Holder's residence. While there, TFO McClellan observed a

black vehicle with large chrome rims pull up. Bruce Holder exited the black vehicle, knocked on the door to the residence, and then went inside. After a few minutes, Bruce Holder left the trailer, returned to the black vehicle, and left.

b.   A few minutes later, TFO McClellan watched Bruce Holder return. Lexus Holder got into the vehicle and the two then left. The vehicle was followed, and agents watched the vehicle park in front of Corina Holder's residence. Once there, Lexus Holder exited the vehicle and Bruce Holder continued driving west on Glenwood Avenue.

c.   Lexus Holder borrowed Corina Holder's Scion, picked up food, and then went back to her house. While Lexus HOLDER was away from her house, the CS and KEES were negotiating the drug deal. KEES contacted the CS and explained that he could get 35 pills for $1,120.

d.   Shortly thereafter, the CS met KEES and his girlfriend, Elicia Suarez, at Walmart, located at 2881 North Avenue, Grand Junction, CO. The CS gave KEES $1,200.00. KEES told the CS he would meet him/her at the Rimrock Walmart, located at 2545 Rimrock Avenue, Grand Junction, CO.

e.   Agents maintained surveillance on Suarez and KEES as they drove to Lexus Holder's residence. By the time KEES and Suarez arrived, Lexus Holder had returned to the residence and had been observed entering the home. No other individuals had been observed in the residence at this time, other than Lexus Holder and her young child.

f.   TFO McClellan watched KEES exit the front passenger side of the vehicle, go to the front door at 2545 Kennedy Ave, and go inside. Suarez stayed in the driver's seat of the vehicle. A few minutes later, KEES left the residence and got into his vehicle. The two then drove to the Rimrock Walmart to meet with the CS.

   g. Surveillance was maintained on KEES from the time he initially met with the CS until he returned. KEES did not meet with anyone or stop anywhere other than Lexus Holder's residence. Based on my training and experience, I know that short term traffic at a location is consistent with drug trafficking. Based on KEES's statements to the CS, as well as the duration of his stop at Lexus Holder's residence, I believe that KEES travelled to the Lexus Holder's residence to obtain the fentanyl pills he agreed to sell to the CS. Agents later interviewed KEES, who confirmed that he obtained the fentanyl pills from Lexus Holder on this occasion.

   h. While maintaining surveillance at the Rimrock Walmart, I watched KEES exit the front passenger side of his vehicle and run across the parking lot toward the CS's vehicle. After dropping KEES off, Suarez drove through the parking lot. When KEES arrived at the CS's vehicle, he spoke briefly with the CS. KEES then put his hand into the CS's vehicle and gave the CS a black tube that contained 34 suspected fentanyl pills. KEES then ran through the parking lot back to his vehicle and departed. The pills KEES provided the CS were submitted to the lab for analysis and the results revealed the presence of a combination of fentanyl, acetyl fentanyl, and acetaminophen.

  11. On August 24, 2018, agents conducted an interview with KEES. Among other things, KEES admitted that he distributed blue pills containing fentanyl on a number of occasions. KEES told agents that he obtained most of the pills from Lexus Holder at her home. KEES also stated that he would, on occasion obtain fentanyl pills from an associate whom he identified from a photograph as Michael Bowen. KEES stated that Bowen had told him that the ultimate source of supply for the pills was Lexus's father. KEES stated that he has never interacted with Lexus's father, whom agents identified as Bruce Holder.

## CONCLUSION

12. Based upon the aforementioned information, events, and my training and experience, I submit that there is probable cause to believe that Jonathan KEES, has committed a violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C), distribution of a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance, which substantiates the issuance of an arrest warrant.

I, Kevin Doheny, a DEA Special Agent, being duly sworn according to law, hereby state that the facts stated in the foregoing affidavit are true and correct to the best of my knowledge, information and belief.

Respectfully submitted,

*s/ Kevin Doheny*
Kevin Doheny
Special Agent
Drug Enforcement Administration

Subscribed, attested to, and acknowledged by reliable electronic means on January __17th__, 2020.

_____
Gordon P. Gallagher
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF COLORADO

**Application and affidavit reviewed and submitted by Jeremy Chaffin, Assistant United States Attorney.**